The next case this morning is 524-0087, People v. Jackson. Arguing for the appellant is Antonio Madrigal, Jr. Arguing for the appellee is Jenna Siever. Each side will have 10 minutes for their argument. The appellant will also have five minutes for a vote. Please note, only the clerk of the court is permitted to record these proceedings today. Morning, counsel. How are you all? Good, how are you? We are well. Glad to have you here today. Okay, Mr. Madrigal, are you ready to proceed? Yes. Then go right ahead. Good morning, your honors, counsel, and may it please the court. My name is Antonio Madrigal and I represent defendant appellant Commodore Jackson in this matter. We will be addressing arguments one, dealing with the confrontation clause, hearsay, and other bad acts evidence, and issue three, counsel's ineffectiveness stemming from the confrontation clause issue. Justice told Officer Pingel that Mr. Jackson left the scene in a white Lincoln SUV. Justice told, she also told Officer Pingel that the complainant's attacker was Mr. Jackson. She also said that his behavior was aggressive and he was stalking her. She also told two other friends, Tarika and Monique, that my boyfriend is stabbing your boyfriend. She also told the complainant, he is stabbing. Now, what do these statements all have in common? Justice never testified to them. And instead, this testimony was introduced through others and without any questions as to why justice didn't testify herself. Now, the confrontation clause of the Sixth Amendment says, in all criminal prosecutions, the accused shall enjoy the right to be confronted with the witnesses against them. The confrontation clause prevents testimonial hearsay statements of a declarant from being admitted against a criminal defendant unless the declarant is unavailable to testify and the defendant had a prior opportunity to cross-examine the declarant. Now, non-testimonial hearsay statements aren't subject to the protection of the confrontation clause but they may be excluded under normal hearsay rules. Now, the United States Supreme Court has defined testimonial statements as those statements that were made in an effort to re-account the facts of a past crime in order to identify or provide evidence to convict the offender. Now, this is especially true in the subject of volunteered testimony, as the Supreme Court said in Davis. This type of testimony remains subject to the confrontation clause. Now, Justice's statements, all of her statements to law enforcement, Officer Pingo and Arenas, those were testimonial and hearsay rules don't apply to them. If we look at the overall situation, Justice was the sole eyewitness and the only one to identify Mr. Jackson as the offender. She essentially, without her statements, the police had nothing to go on. And this is evident from the record because Tarika at one point testified that Justice was the only person to know what had happened. Now, there's only two ways for the protections of the confrontation clause to be excused. Those ways are an ongoing emergency and a dying declaration. Now, we can all agree here that this wasn't a dying declaration. And this certainly wasn't an ongoing emergency. Now, the state says it's an ongoing emergency, but it wasn't, if we look at the facts here. Now, the Illinois Supreme Court made it clear in their opinion and people released that, there doesn't have to be a formalized statement and affidavit to determine whether the statements were testimonial or not. What matters is the statement's purpose and whether the purpose was to establish or prove past events relevant to the later criminal prosecution. And for an ongoing emergency, we have to look at circumstances in which everything took place. Now, our Supreme Court said that we need to consider these factors, like the scope of the emergency, which weapon is being employed and whether there was a threat to first responders. Now, we don't have any of those factors present here. Now, the state certainly said this case is like Sutton, where there was a gunman on the loose, but Sutton dealt with multiple people being shot. We know from the record that Officer Pingot and Officer Arenas weren't after a gunman. This was, for all we know, this was a private matter. It was two drunk guys that fought each other in a private matter and nobody else was injured besides the complainant. When both officers arrived, the complainant was already being carted off in an ambulance. They never indicated to keep those medics behind. They never arrived at the scene with their guns drawn. They didn't do any of that. They started to take questions, tape off the scene, and start taking pictures of the scene. Nothing indicates that this was an emergency. So the state, yes. This was a bench trial, wasn't it? Yes, it was. And how does that affect our analysis? Aren't we to assume as a court that the trial judge has an ability to sort out what's admissible and what isn't? Yes, certainly the judge had the ability to restrain himself or restrain the statements coming in, but it also falls on defense counsel to bring up the correct arguments and object correctly. It also goes into our ineffectiveness argument in that- How does that affect our ineffective analysis when the judge is presumed to know the law and to know what is admissible? No, I agree, Your Honor. The judge is presumed to know the law, but in this case, counsel should have brought at least an argument saying that, look, this is a sole witness. She is not here. She never stepped foot in this whole judicial process. And all these statements were just introduced by multiple witnesses, Your Honor. Wouldn't that also affect how we analyze what is prejudicial and what isn't? Yes, it would, Your Honor. Yes, it would. Before you're out of time, because I think the state's brought up that this issue's been forfeited if you'd want to address that. Now, yes, Your Honor. This issue, they say that we forfeited because we didn't bring it up on the opening brief, but we see cases like People v. Williams where the Illinois Supreme Court especially rejects this notion. It would be inherently unfair for us to bring up a case like this bring it up in every opening brief. And certainly we can still reply to it as we did in our reply brief. So that is just patently false, whatever the state said in saying that we forfeited the issue. And those forfeiture issues apply to the state the same way, Your Honor. Thank you. Yeah. Now, we don't have the factors, any evidence that this was an ongoing emergency. And let's look at the statements where Mr. Jackson is being described as aggressive and stalking. Those were inadmissible hearsay and they were improper bad acts used only to paint him in a bad light. The state seems to want to get through this hurdle by saying that they were never taken for the truth value because they were the show the officer's course of investigation. But that argument is just simply wrong. First, the course of investigation is not an exception to hearsay. Courts across Illinois have pointed out that there's a distinction between an officer testifying to the fact that he spoke to a witness without sharing what they said. And the situation we have here where an officer is testifying to the contents of the conversation. If we look at the record, counsel objected, the objection was overruled and the officer then the state said, what did she tell you? It's a matter of language here and he disclosed the whole conversation. We see this isn't the proper way that the course of investigation doctrine is supposed to be used. We see it in people like Davison, we see it in people we seared in, we see in people before where officers say, I spoke to multiple witnesses and then I took action. They're not disclosing the contents of the conversation. The statements he's stabbing and my boyfriend is stabbing your boyfriend, those statements are just simply hearsay. We have to look at a totality of the circumstances around those statements to determine if they were actually an excited utterance, like the timing, the mental and physical condition of the declaring, the nature of the event and the presence or absence of self-interest, but we don't have any of those here. Then right before my time runs out, the ineffectiveness issue, counsel objected once and it stopped there. He never objected anything else. He never even questioned the matter as to why the sole witness, the only eyewitness was never brought in to be questioned or cross-examined. Therefore, for those reasons, we ask you to remand this matter for a new trial. Thank you, counsel. Before we move to Ms. Seaver, Justice Vaughn, Justice Moore, do you have any questions? I have one more question. Under the Confrontation Clause, counsel, Yes. How does second-pronged plain error get analyzed under People v. Patterson? People v. Patterson. We're saying that this is definitely structural error. I know Patterson says that Confrontation Clause issues aren't structural error, but they certainly are because it affects the very nature of the judicial proceeding here where we have the- How can we ignore the precedent of the Illinois Supreme Court? But we see, I believe, two other instances where the Illinois Supreme Court said that they're not limited to the list of, just as the United States Supreme Court, they're not just limited in seeing those types of issues. They can also broaden the scope and see those kinds of issues and hear them, such as the Confrontation Clause. If you like further briefing, I'm more than happy to bring it to you. Yes. Thank you, counsel. That'd be ordered if we feel that's necessary. Anything else, Justice Moore? Nothing else. Obviously, counsel, you're gonna have your time for rebuttal. Ms. Seaver, go right ahead if you're ready. May it please the court. Counsel, my name is Jenna Seaver. I represent the people of the state of Illinois. First, I'm gonna discuss the overwhelming amount of evidence against defendant in this case. And then I will discuss the Confrontation Clause. Again, there was an overwhelming amount of evidence against defendant in this case. We had two videos introduced by the people depicting the entire stabbing from two different angles. We had testimony from 10 witnesses, including the victim, witnesses who were with defendant and the victim inside the bar, and all of the officers on the scene and who aided in this investigation. Importantly, we have a specific identification of defendant by Monique. So she was a witness that was inside the bar with defendant and the victim. She identified defendant, not only by what he was wearing. Counsel, so by raising self-defense, doesn't the defendant admit that the crime was committed? Your Honor, so he admitted to the act that caused the victim's injury. And in this case, it was of course the, because it's an affirmative defense, it was the burden for the state to prove that defendant did not act in self-defense, but that burden was easily met by the people because of all the evidence presented in this case, namely testimony from Monique, Tarika, and the victim who were all witnesses to the confrontation between defendant and the victim inside the bar. So what did the video show? So the video shows defendant and the victim coming outside. So there's two different videos. The first one is like right outside the door of Hanger 9 and the defendant comes out. He goes around the corner of the building waiting for the victim. We can see that in both videos. The victim comes out, takes his shirt off, kind of puts up his fists ready to fight. Defendant jumps out at him, begins stabbing him. Victim starts running around, obviously trying to get away from the defendant. Defendant pursues him and makes the stabbing motions towards the victim again. And we can see in the second video that proceeds. The victim is running away around the building. Defendant is pursuing him. The victim actually falls on the ground. Defendant stands over him and you can see him make that stabbing motion again, making the cut on his forehead. Then the defendant leaves, plays to the parking lot, gets in his car, and then he leaves the scene. What do the pictures depict as far as wounds? I'm sorry? What do the pictures depict as far as the wounds are concerned? The photos? So there was photos of all of his stab wounds to the forehead, thigh, shoulder, and I think his left side of his back. It shows a great amount of blood and the severity of the stab wounds. Especially the one on his forehead which police officer Stein said it was about five, six inches long. But with that evidence, of course, and regarding the self-defense evidence, again, there's evidence that he did not act in self-defense as I described through the depiction of the video of defendant coming out and stabbing this guy. I mean, the victim admits that he was, wanted to be in a fight with a defendant, but defendant's got a weapon. There's no testimony that the victim had a weapon. The victim testified that he did not insult or threaten or provoke defendant that would result in him being stabbed. The victim is clearly fleeing from defendant in the videos and defendant is consistently pursuing him. Also, the witnesses testified inside the bar that an inappropriate comment was made to Tarika. Defendant took offense. He became agitated and in her words, was looking around crazy. Victim similarly testified that he was acting crazy like he wanted to fight. He got into it with the victim. They agreed to go out and fight. Defendant decided to stab the victim and here we are. And therefore the people met their burden that defendant did not act in self-defense and he is guilty of these crimes. Independent of the self-defense argument failing, there was plenty of testimony presented also through the videos and the photos that defendant did have a weapon on him. We looked at pages 245, 246, that's the victim's testimony where he identifies that the defendant had a blade in sand and that even demonstrated to the trial judge what the stabbing was like and the defensive positions he tried to do. And then officer Stein also in his experience testified that it was a knife that caused the victim's stab wounds. Regarding aggravated battery, there's a lot of photos of the wounds and of the victim's clothing and of the scene of the crime depicting all the blood. And there's testimony from the officers and the victim about the pain he was in, about the significant loss of blood, including the victim saying he was lightheaded and got off the ground. You can see him laying on the ground in the video. He got up and walked to the front of Hanger 9. He said he didn't wanna die like that. There's also testimony from defendant, or sorry, testimony from the victim that he not only was in pain, but he also suffered a permanent injury from a nerve damage from the stab wound to his left shoulder that would require plastic surgery. He also had a permanent scar on his forehead from the stab wound to his forehead. And it's because of all this evidence that justice was not the main witness against defendant. Again, Monique identified defendant as the perpetrator. And not only did she give an in-court identification of defendant, she was actually shown People's Exhibit number three. And that's kind of like the video that depicts the whole entire building. And she said, this is the victim. He's the one that's shirtless. Defendant is the one wearing the white bucket hat and sweatshirt. That white bucket hat and sweatshirt, you can see that in the first video as well. It's a closer shot. And that was also found in his car, which also further identifies that defendant was the person in this video and the one that committed this crime. Also, Sergeant Pingold's, or sorry, Justice's statements to Sergeant Pingold's were limited to the scope of what steered the investigation. The people asked a question about what Justice had said to the Sergeant. He began to respond. Defense counsel objected. The people explained that they weren't offering this for the truth of the matter asserted, but rather what steered the investigation. Trial court did object, or sorry, did overrule the objection, but they did say that it was limited to that limited scope of what steered the investigation. Again, this is a bench trial. We're presuming that the judge, of course, limited it for that purpose and didn't consider it for any improper purpose. There's actually no evidence that he did consider it in a proper way, because again, overwhelming evidence of defendant's guilt in this case. And even if we look at the trial court's findings, they don't mention, he doesn't mention her statements at all. He mentions the statements of the 10 witnesses that testified, and he highlighted a lot of the people's evidence, like the videos and some of the photographs, like photos of the stab wound. Also, these statements, I mean, her statements to the Sergeant were non-testimonial, which is the test for the Confrontation Clause. They're still on the scene of the crime when this happens. Officers are absolutely allowed to make initial inquiries and assess the situation. Unlike some of the defendants in, like Hammond, for example, they don't know who the defendant is. They don't know who the defendant is, where he is. They need to assess the situation and make that determination to keep, you know, for their own safety, for the safety of the victim, for the safety of everybody that was there on the scene. They have no idea who this defendant is, what he's doing, and whether he's still a threat. So it was absolutely an ongoing investigation or ongoing emergency in this case. And it's not until they talk to justice that they realize, okay, he's no longer here. And then they immediately relay that information to, I think it's a Murfreesboro Police Department, and they secure a defendant. It's no longer an ongoing threat. And finally, just the statements to the victim and Tarika Monique from justice were absolutely excited utterances, permissible as an exception to hearsay because the event was startling and spontaneous. Statements that she made to them were about the stabbing and one occurred while the stabbing was taking place to the victim. And that's so it's simultaneous. And the statements to Tarika Monique happened within a few minutes after there's timestamp on the video when justice leaves and when the police arrive. So for these reasons, people respectfully request that this court affirm defendant's convictions and sentences. Thank you. Thank you, Ms. Seaver. Justice Vaughn, Justice Moore, do you have any questions? I have one question. I asked counsel for the defendant about second prong plain error on the confrontation clause and people versus Patterson. What is the state's position on that? State's position is that the confrontation clause is not a structural error that can be reviewed under the second prong of plain error, your honor. What about the Patterson case? Could you remind me of the holding in that one? The Illinois Supreme Court held that claims under the confrontation clause are not structural errors, not cognizable under the second prong plain error. And I think counsel said that there were other cases. That it's not second prong plain error? Well, we'll have to ask him again about that. You don't have any other comment about that? I apologize, your honor. I'm not as familiar with that case at this moment, but I'd be happy to discuss it further if need be. Thank you. Anything, Justice Vaughn? With regard to justice's statements, what do you think the state's strongest argument is that it's non-testimonial, that it's an excited utterance, or that it's part of the race chest? The police explain it, why they took the investigative actions they took. So, I'm sorry if I confused the statements, but justice's statements to Sergeant Pinghold, non-testimonial, but her other statements to Tariqa and Monique, that was a statement about my boyfriend is stabbing your boyfriend. And then the statement to the victim from justice about while he was getting stabbed, she said something, I think like he is stabbing, he is stabbing, something like that. Those statements, people argue that were excited utterances, but the statement to Sergeant Pinghold, that was A, non-testimonial, and B, part of the ongoing emergency, or part of the ongoing investigation. I mean, it seems odd that you would not have the testimony of an eyewitness like that to testify in front of the judge, but the state's kind of getting them in through the back door, it seems, through these other exceptions. Your Honor, based on the record, I'm not familiar with why she wasn't a witness in this case. However, the information brought in from these witnesses, it was limited to the scope of what steered the investigation. And there's nothing in the record that suggests that the court relied on these statements. And again, there's overwhelming evidence from the other witnesses that defendant was guilty of this crime. Thank you. Thank you. Anything else, Justice Moore? Nothing else. Well, thank you, counsel. Mr. Madrigal, go right ahead with your rebuttal. Yes, Your Honor, just a few quick points. The state said that there was overwhelming amount of evidence. They cite the two videos, the two grainy videos where we see the... Obviously, we say that Mr. Jackson was involved in the fight, but we have testimony from Officer Arenda saying he never saw, from looking at the video, he never saw a knife. That's what the state specifically alleged, that there was a knife, there was no testimony of a knife ever recovered on Mr. Jackson's person or in his car or in his apartment where they found him. There was no testimony of how long this knife was, what color it was. For all we know, this could have been from a fingernail, this could have been from a broken glass, this could have been from a sharp rock, this could have been many other things that could have been used during this fight. But the state specifically alleged a knife, and this is very clear in their charging argument. And there was never any testimony of a knife that was ever found. And then the state also said that there was many witnesses that identified Mr. Jackson and the white bucket hat. But let's take a big picture overall look. These witnesses testified that, specifically Monique, she had 10 shots that we know that she drank at the night. The complainant had at least six shots, Tarika had three or four shots that we know, and they were just getting started at some point during the night. I'm assuming that they had a little bit more to drink before this altercation happened, but simply the testimony of them is completely unreliable as we know the effects of alcohol can have on people. They also said, the state also said that raising self-defense then means that we admitted to committing this thing. But that is patently false. Just because you raise self-defense, you don't admit that you knowingly possessed a knife. This just means that we met force with force. When the altercation, this doesn't mean that, oh yeah, I hit him with a knife. I stabbed the complainant with a knife. And it's just completely false that raising self-defense then means that you admitted to all the crimes that happened. That's just completely wrong. And then lastly, for the confrontation clause, the state said that they entered these testimonies from justice because it was steering the course of investigation. It was the course of investigation. But we know that the confrontation clause is safeguarded and it's in our constitution. No local hearsay rules, statutory rules, Illinois Supreme Court rules can override the United States Constitution. We know that the only way to excuse the protections of the confrontation clause is to determine whether the statements were testimonial and they were used to prove facts of a past crime. And then admitted in the criminal prosecution. Now we have those things. These are all of justice statements to the officers were testimonial. She never set foot in the courtroom. She was never cross-examined by Mr. Jackson at any point of the judicial proceedings. Now, and then they were backdoored through the course of investigation. But as I just said, local hearsay rules, statutory rules are not trumped by the confrontation clause, Your Honor. And for those reasons, we ask you to remand this matter for a new trial. Thank you. Well, thank you, counsel. Any last questions, Justice Vaughn or Justice Moore? No, no further questions. No other questions, thank you. Well, thank you, counsel. Obviously we'll take the matter under advisement. We'll issue an order in due course.